(No. 68240.

HAROLD MEYER, Appellant, v. CATERPILLAR
TRACTOR COMPANY et al., Appellees.

*Opinion filed January 17, 1990.—Modified on denial
of rehearing April 9, 1990.*

2

Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago (Nat P. Ozmon, Mark Novak, Richard A. Kimnach and Marc A. Taxman, of counsel), for appellant.

Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellees.

George M. Elsener, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Asher, Gittler & Greenfield, of Chicago (Lester Asher, of counsel), for *amici curiae* Illinois State Federation of Labor and Congress of Industrial Organizations *et al.*

Nancy Jo Arnold, of Kralovec, Marquard, Doyle & Gibbons, Chrtd., of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel.

JUSTICE RYAN delivered the opinion of the court:

Plaintiff, Harold Meyer, sued in the circuit court of Cook County, seeking to recover damages for a knee injury he sustained while employed as a millwright for third-party defendant Engineered Structural Products, Inc. (ESP). The injury occurred when a bundle of steel storage racks, which was sitting on the ground, fell over and struck plaintiff. Plaintiff alleged a violation of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*) and named as defendants Caterpillar Tractor Company (Caterpillar) and Frazier Manufacturing Corporation (Frazier). Defendants, in turn, sued ESP, seeking indemnity in the event that they were held liable for plaintiff's injury.

In 1976, Caterpillar purchased a storage rack system from Frazier. Frazier then entered into a subcontract with ESP. ESP provided skilled workers to assemble and erect the storage racks at Caterpillar's warehouse facility in Montgomery, Illinois. Plaintiff was an employee of ESP and was involved in the assembly at the Caterpillar jobsite. The jury returned a verdict for the plaintiff, and found against Caterpillar and Frazier on the indemnity claim. On appeal, the appellate court affirmed the trial court's determination that the Structural Work Act was applicable to plaintiff's cause of action. The appellate

court reversed and remanded for a new trial, however, on the ground that the defendants had been unfairly prejudiced at trial by the introduction of the opinion testimony of five previously undisclosed witnesses who testified concerning the procedure of unbundling the racks at the Caterpillar site. (179 Ill. App. 3d 268, 282.) We granted plaintiff's petition for leave to appeal (107 Ill. 2d R. 315(a)). In view of our holding, it is not necessary to address this issue. We now hold that plaintiff's injury does not fall within the scope of the Structural Work Act.

Prior to installation, the storage racks were transported in bundles containing six to eight racks per bundle. Each rack was 24 feet long by 40 inches deep, and weighed approximately 250 pounds. Each bundle was banded together with several metal bands, which were removed when the racks were to be installed. The bundles were delivered to the jobsite by flatbed trucks and off-loaded by a cherry picker crane or a forklift truck.

Initially the bundles were transported from the trucks to their final destination, and then left there resting flat on their sides, still banded and bundled. Later the process of unloading the bundles changed. After the forklift delivered each bundle to its endpoint, the bundle would be unloaded and the individual racks removed while the bundle remained suspended on the tines of the forklift. Later still a new procedure was adopted whereby the forklift would merely deliver each bundle to its endpoint and then abandon the bundle on the ground, leaving the bundle standing on its long, narrow edge. ESP employees would then unband the bundle and assemble the racks.

On September 8, 1976, plaintiff was working around the bundles, taking bundles apart and assembling the racks. While plaintiff stood on a curb near a bundle which was being unbanded, he heard a snap, and some-

one say "it's coming at you." The racks toppled over onto their sides. The tumbling bundle of racks struck the plaintiff and plaintiff's knee hit the curb. Plaintiff landed flat on his back. The present action followed. Plaintiff alleged that defendants had willfully violated the Structural Work Act by their failure to provide proper support for the bundle of storage racks to prevent the racks from falling over and injuring plaintiff.

At trial, plaintiff called Dennis Pulchalski, a construction safety expert who testified regarding the safety of the procedure used at the Caterpillar site for unbanding and removing the racks from the bundles. Plaintiff additionally called three tradesmen who were employed by ESP and who were working at the Caterpillar jobsite at the time of plaintiff's injury. Plaintiff also called an employee of Caterpillar and an employee of Frazier. Each of these five employees of the defendants and the third-party defendant offered an opinion, over defendants' objection, on the "unsafeness" of the procedure utilized at the Caterpillar site to unband and separate the storage racks. Plaintiff did not disclose to defendants prior to trial his intention to elicit the opinions of these latter five witnesses concerning the safety of the unbanding and unbundling procedure.

Defendants appealed from the jury's $900,000 verdict in favor of plaintiff. Defendants argued before the appellate court that plaintiff's cause of action did not fall within the scope of the Structural Work Act, that defendants were denied a fair trial by plaintiff's introduction of the opinion testimony of the five previously undisclosed expert witnesses, and that the $900,000 verdict was grossly excessive for the knee injury sustained by plaintiff. The appellate court affirmed the trial court's determination that the Structural Work Act applies to plaintiff's cause of action, and it held that the $900,000 verdict was not excessive. The court, however, reversed

and remanded this cause for a new trial on the ground that plaintiff's failure to disclose his intention to call the five witnesses to offer opinions on the "unsafeness" of the unbanding and unbundling procedure constituted a violation of this court's Rule 220 (107 Ill. 2d R. 220). The appellate court further found that the safeness or unsafeness of the procedure was a matter of common knowledge and for that reason the opinion testimony should have been excluded. Plaintiff appealed to this court. Defendants, pursuant to this court's Rule 318(a) (107 Ill. 2d R. 318(a)), now raise the issue of the applicability of the Structural Work Act to plaintiff's cause of action. We hold that the Act is inapplicable to situations, like the one before us, in which the plaintiff's cause of action is based on a failure to provide support for materials resting on the ground prior to their incorporation into a building.

The Structural Work Act provides:

> "All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." Ill. Rev. Stat. 1987, ch. 48, par. 60.

This court has held that the Act may be violated by a failure to provide a needed scaffold, hoist, crane, stay, ladder, support, or other mechanical contrivance, as well as by providing a defective one. (*Louis v. Barenfanger* (1968), 39 Ill. 2d 445.) The legislature enacted the Structural Work Act in order to provide protection to workers

engaged in work activities of a particularly hazardous nature. (*Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 422; *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 151; *Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 127.) While the Act is to be liberally construed to effectuate this purpose, the Act was not intended to cover any and all construction activities and the hazards attendant thereto. *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 422; *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 536.

Plaintiff argues that a crane or a forklift truck should have been used to support the bundle of racks during the unbanding and unbundling process. Defendants assert that neither a crane nor a forklift can fall within the scope of the Act when used solely for the support of materials, as opposed to the support of workers. Defendants urge this court to adopt the rule that the Structural Work Act applies only to those devices used for the support of workers. We decline to do so.

We note, as did the appellate court, a conflict in the appellate court decisions over the issue of whether devices used to support workers are the only devices covered by the Act, or whether devices used to support materials and/or tools are also covered. In *Matthews v. Commonwealth Edison Co.* (1980), 90 Ill. App. 3d 1024, a worker was operating a bulldozer in order to uproot trees on a construction site. One of the trees he had uprooted fell over and struck his arm. The court held that the bulldozer the plaintiff was operating at the time of the injury was not a "mechanical contrivance" within the meaning of the Act. The *Matthews* court made the broad statement that "[t]o come under the Act's coverage, a case must feature harm caused by *** something a worker is using to support himself. Where that feature is missing there can be no. liability under the statute."

(90 Ill. App. 3d at 1025.) Other cases have followed *Matthews*, and held that only devices used in some manner as a platform for workers fall within the scope of the Act. See *Carlson v. Moline Board of Education, School District No. 40* (1984), 124 Ill. App. 3d 967 (defendant failed to provide braces to support an assembly of lockers which tipped over and injured plaintiff); *Quinlin v. Northwestern Steel & Wire Co.* (1985), 139 Ill. App. 3d 535 (metal sheet lying on roof on which plaintiff was working was caught by a gust of wind and struck plaintiff).

Another line of cases, beginning with *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, rejects the *Matthews* interpretation of the Structural Work Act. In *Urman*, the plaintiff was injured when several roof trusses which were sitting on the ground fell over and struck him. The court held that the defendants' failure to provide support for the trusses to prevent their tipping over could constitute a violation of the Act. The court flatly rejected the proposition that a support device must somehow function as a support for workers in order to fall within the scope of the Act. The court reasoned that by its terms the Act is not so restricted. (101 Ill. App. 3d at 1090-91.) The court stated that "[w]hen a person is injured by the failure of *any* support device the courts must determine whether the injury is directly related to the specific, extrahazardous risks that the Act was designed to prevent." (Emphasis in original.) (101 Ill. App. 3d at 1095.) Other cases have followed *Urman*, holding that the Act covers support devices used on a construction site, whether their purpose is to support workers or materials. See *Prange v. Kamar Construction Corp.* (1982), 109 Ill. App. 3d 1125 (plaintiff injured when poles fell from tractor-forklift he was using to move the poles on construction site); *Wellston v. The Levy Organization, Inc.* (1988), 175 Ill. App. 3d 301

(stack of doors sitting on floor fell over and struck plaintiff).

This court has never squarely addressed the issue of whether the Structural Work Act covers devices used only for the support of materials as opposed to workers. In *Miller v. DeWitt* (1967), 37 Ill. 2d 273, this court upheld without discussion the holding of the appellate court that the shoring used to hold up a gymnasium roof during a remodeling project was a support device covered by the Act. The appellate court in *Miller* reasoned that the fact that the shoring may not have constituted temporary structures designed or used to support workers and their materials while integrating such materials into the building did not necessarily mean that the shorings were not covered by the Act. "[T]hat [the shorings] may not have been 'scaffolds' *** does not militate against their being 'supports.' They were intended to support temporarily a part of the building itself during construction. The statute itself affording the best means of its own exposition, they were, literally, 'supports,' and may have been, literally, 'stays' or 'other mechanical contrivances.'" *Miller v. DeWitt* (1965), 59 Ill. App. 2d 38, 127.

In *Navlyt v. Kalinich* (1972), 53 Ill. 2d 137, this court held that a sewer trench was a structure within the meaning of the Structural Work Act and that failure to provide shoring to protect against the collapse of the walls of the trench could constitute a violation of the Act.

In *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, this court held the Act applicable to the case of a worker who was killed one-half mile from the construction site when a 10-ton pedestal fell over and crushed him. The pedestal was a component part of a generating unit under construction at a power plant and was being unloaded from a railroad car. The defendants

in *McNellis* failed to use a crane to stabilize the pedestal during the unloading process. We there noted that the unloading procedure could be viewed as "an integral part of the erection operation." (58 Ill. 2d at 151.) *McNellis*, however, is not dispositive of the question here before us. Our decision in *McNellis* was predicated, in large part, upon the unique contractual provisions present in that case. See *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 437.

More recently, in *Delgatto v. Brandon Associates, Ltd.* (1989), 131 Ill. 2d 183, we held the Act inapplicable to a situation in which unsupported ductwork fell and struck the plaintiff while he was working on an air-duct system. In *Delgatto*, we did not reach the question of whether the failure to provide a support for tools and/or materials can constitute a violation of the Act. There we found no liability under the Act because the plaintiff failed to present any evidence that the defendant, in the exercise of due care, would have provided a support and because the plaintiff himself created the alleged need for a support device by voluntarily standing the ductwork upright against an adjacent wall. In *Delgatto*, we also noted that *McNellis* has a very limited application and pointed out that in *McNellis* there was a written agreement between the parties that the work was within the Act.

While this court has not spoken definitively on the issue of whether the Act can apply to devices other than those used for the support of workers, we note that in *Navlyt v. Kalinich* (1972), 53 Ill. 2d 137, the shoring which the plaintiff alleged was necessary to prevent the walls of the sewer trench from collapsing would have been used for the support of the trench walls, not for the support of the worker. Similarly, in *Miller v. DeWitt* (1967), 37 Ill. 2d 273, this court endorsed the reasoning of the appellate court that the shoring used to support

the gymnasium roof could constitute a support device within the purview of the Act even though the shoring may not have been used for the support of workers.

We further observe that the language of the Act does not evidence a concern for the nature of the load supported by any of the enumerated devices. The Act is commonly known as the "Scaffold Act." The common and customary meaning of the term "scaffold" is a device used for the support of workers as they work on buildings or other structures. (*Urman*, 101 Ill. App. 3d at 1090-91.) But by its terms, the Act is not restricted by the scaffold concept. The Act applies to "scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances." It has been aptly noted that the primary function of some of these devices, particularly hoists, cranes and stays, is to provide support not for workers, but rather for materials. (*Prange*, 109 Ill. App. 3d at 1130.) Defendants argue that the language of the Act mandates the interpretation that it applies only to supports for workers. Defendants assert that the Act enumerates certain support devices, and then creates as the class of protected persons those "employed or engaged" on such devices. (See *Carlson v. Moline Board of Education, School District No. 40* (1984), 124 Ill. App. 3d 967, 973.) This reasoning, however, ignores the phrase immediately following the language quoted by defendants, "or passing under or by the same." We find that this language, read together with the devices enumerated in the Act, manifests an intent that the scope of the Act not be limited to devices used only for the support of workers.

Our analysis does not end, however, with the determination that the scope of the Act is not restricted to those devices used for the support of workers. The Act requires not only that the device in question be among those listed in the Act; it further requires that in order

for any of these devices to fall within the Act's coverage, the device must be erected or constructed "for the use in the erection, repairing, alteration, removal or painting" of any of the enumerated structures. By its terms, the Act speaks only to the peculiar hazards presented by certain support devices engaged in the enumerated structural work activities. (*Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 423-24; *Long v. City of New Boston* (1982), 91 Ill. 2d 456, 467-68.) It must be remembered that these racks stood only 3½ feet high and were 24 feet long. Several of them were banded together and were lying on the ground. The determinative question here is whether the procedure of unbanding and unbundling the storage racks on the ground, prior to their incorporation into the Caterpillar building, constituted structural work activity within the contemplation of the Act. We hold that it did not.

There are certain hazards present on structural work sites which are not unique to the construction industry. These hazards do not fall within the purview of the Structural Work Act merely by virtue of the fact that they are present on a structural work site. The Act simply does not authorize recovery for injuries from such hazards merely because they occur on a structural work site.

The protection of the Act was extended to workers engaged in the specific activities named in the Act because of the extrahazardous nature of those activities when the devices enumerated in the statute are used in connection with the named activities. As noted by the appellate court in *Urman*, if a person trips over a ladder rather than falls off of it, he probably will not be able to claim a Structural Work Act violation because his injury has no connection with the hazardous nature of the ladder. (*Urman*, 101 Ill. App. 3d at 1095-96.) The ladder used in the appellate court's example, although one of

the devices enumerated in the Act, was not, at the time of the injury, being used in one of the activities named in the Act. In *Long v. City of New Boston* (1982), 91 Ill. 2d 456, 466, this court stated:

> "The Structural Work Act is not applicable to *any* work that requires the use of a ladder. Rather the Act's application is limited to the use of ladders in performing specified activities upon structures, listed in the statute: 'erection, repairing, alteration, removal or painting \*\*\*.' (Ill. Rev. Stat. 1977, ch. 48, par. 60.)" (Emphasis in original.)

Thus the legislature saw fit to impose limitations on the Act's coverage even with respect to injuries incurred by the failure of the named support devices when used on structural work sites. (See *Cooley v. Central Illinois Public Service Co.* (1982), 110 Ill. App. 3d 685; *Kenworthy v. Young* (1979), 70 Ill. App. 3d 144; *Allen v. Godar* (S.D. Ill. 1979), 476 F. Supp. 172. See also M. Polelle & B. Ottley, Illinois Tort Law 522-24 (1985).) The boundaries of the Structural Work Act are circumscribed by the language of the Act itself. The device in question must be in use in one of the activities enumerated in the Act at the time of the injury.

The crane or forklift plaintiff claims should have been used to support the storage racks in the case before us would merely have supported the racks during the unbanding and unbundling process. This is not one of the activities specified in the Act, nor does it involve a hazard peculiar to structural work. Similar devices serve similar functions in a myriad of contexts other than structural work. In *Crafton v. Lester B. Knight & Associates, Inc.* (1969), 114 Ill. App. 2d 52, the appellate court held that certain activities on a construction site other than those enumerated in the Act were covered. This court, however, reversed the holding of the appel-

late court. *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 536.

A different result might well have been warranted here had plaintiff's injury resulted from the failure of a crane which was lifting the racks into position along the walls of the Caterpillar warehouse. Such activity is clearly within the purview of the Act. But were we to stretch the language of the statute in order to draw within its coverage activities other than those enumerated in the Act itself, we would expand the scope of the Act beyond what the legislature intended. As a necessary consequence, it would be exceedingly difficult to identify those activities which fall within the Act's coverage and those that do not. (*Allen,* 476 F. Supp. at 174-75; Comment, *The Illinois Structural Work Act,* 1975 U. Ill. L.F. 393, 396.) A multitude of activities other than those set out in the Act may be performed on a construction site. But we find untenable the proposition that the legislature intended to sweep all such activities from the realm of the common law and into the boundaries of the Structural Work Act. As we have noted, the appropriate boundaries of the Act's coverage are delineated in the language of the Act itself.

The appellate court, in *Rayfield v. Homart Development Co.* (1981), 100 Ill. App. 3d 620, summarized the history of the Structural Work Act and its purpose as that act relates to the Workers' Compensation Act. When the Structural Work Act was enacted in Illinois in 1907, this State did not have a Workers' Compensation Act, and workers injured through the hazards of construction work often had their claims for compensation defeated because of the doctrines of contributory negligence and assumption of the risk. As the appellate court noted, the purpose of the Structural Work Act " 'was to prevent injuries to persons employed in this dangerous and extrahazardous occupation, so that negligence on

their part in the manner of doing their work might not prove fatal.' " *Rayfield*, 100 Ill. App. 3d at 622, quoting *Schultz v. Henry Ericsson Co.* (1914), 264 Ill. 156, 164.

The appellate court further noted, in *Rayfield*, that in 1911, four years after the enactment of the Structural Work Act in Illinois, the Workmen's Compensation Act was enacted. This act also afforded compensation to injured employees without regard to contributory negligence and thus, in that respect, served the same purpose as the Structural Work Act. The appellate court then noted:

"This background of the Structural Work Act demonstrates that the Act is intended to afford injured workers in the construction trades a remedy where none exists, rather than to provide an additional remedy where other reasonable and satisfactory remedies are available. For this reason, we believe the Structural Work Act should be liberally interpreted where the need for a liberal interpretation reasonably exists to protect and afford relief to injured workers. However, the Act should not be interpreted so that it is extended unnecessarily to cover neoteric theories of liability where the existing workmen's compensation and tort remedies protect and give reasonable and satisfactory relief to construction workers. This is consistent with the view that although the Structural Work Act is to be liberally construed to effectuate its purpose, it should not be interpreted to compel coverage of every construction work injury (*Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 536, 263 N.E.2d 817, 819) or every injury sustained in the operation of machinery at construction sites (*Kenworthy v. Young* (1979), 70 Ill. App. 3d 144, 147, 388 N.E.2d 217, 220)." *Rayfield*, 100 Ill. App. 3d at 622-23.

Thus, in the case at bar the plaintiff had the protection of the Workers' Compensation Act to compensate him for his injuries regardless of any negligent conduct on his part. Also, subject to the limitations of pure comparative negligence (see *Alvis v. Ribar* (1981), 85 Ill. 2d

1, 18), plaintiff has a common law negligence action against the defendants. (The judgment order in the trial court was entered September 26, 1985. *Alr··s* provides that the holding of that case is applicable to all cases in which trial commences on or after June 8, 1981. The effective date of section 2—1116 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1116) is November 25, 1986. Section 2—1116 adopts a modified form of comparative negligence.) There is just no reason, through the guise of liberal construction, to sweep within the protection of the Structural Work Act plaintiff's activities in this case where, as noted above in *Rayfield,* satisfactory relief is available through the Workers' Compensation Act and through traditional tort remedies.

We are cognizant of the fact that placing these bundles on their long, narrow edges, without support, during the unbanding and unbundling process may have presented a danger to those working with or near such bundles. Indeed, it appears that plaintiff may well have had a valid cause of action against defendants based on common law negligence. But as this court has observed in the past, the protection afforded workers by the Act is separate and distinct from those safeguards imposed by the common law. (*Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 458-59.) A worker cannot prove a violation of the Structural Work Act simply by showing that a defendant was negligent with respect to some danger somewhere present on a structural work site. Instead, the plaintiff must prove each of the specific elements of a cause of action under the Act. In the present case, plaintiff has failed to do so. The judgments of the appellate court and of the circuit court of Cook County are, accordingly, reversed.

*Reversed.*