WESLEY STEAD, Plaintiff-Appellant, v. GLENN VALENTINE *et al.*, Defendants-Appellees.

First District (1st Division) No. 1—89—3211

Opinion filed September 3, 1991.

Propp & Schultz, of Chicago (David V. Schultz, of counsel), for appellant.

Bollinger & Ruberry, of Chicago (Nicholas Riewer and Ciara R. Ryan, of counsel), for appellee Michael Construction Company.

JUSTICE O'CONNOR delivered the opinion of the court:

Wesley Stead appeals from the trial court's order which granted summary judgment in favor of Glen and Linda Valentine and the Michael Construction Company on the grounds that Stead could not recover under the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60).

On or before June 19, 1984, Stead worked for John Warrener, a roofer. The general contractor, the Michael Construction Co., paid John Warrener to reshingle the Valentines' house roof. The house's roof was pitched with two sides. At the rear of the house, an approximately eight-foot-wide wooden sun porch or balcony was attached. The porch was on the second story, approximately 25 feet above the ground. The porch was enclosed by railings which were approximately 3½ feet high. The porch was supported by railings which attached to the side of the house and the porch's floor. In addition, the porch was supported by two beams. The porch was not being repaired. After completing a day's work, Stead walked to the middle of the porch to retrieve his trowel and shingles wrapping that he had dropped. While he was in the middle of the porch, the porch collapsed and he was injured.

Subsequently, Stead filed a complaint alleging, *inter alia*, a violation of the Structural Work Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*). The trial court granted summary judgment in favor of the Valentines and the Michael Construction Co. on the grounds that the porch was not a "support" within the meaning of the Act. The Act states:

> "All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and con-

structed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." Ill. Rev. Stat. 1987, ch. 48, par. 60.

At John Warrener's deposition, he stated the following: On June 19, 1984, he erected an aluminum extension ladder at the rear of the Valentines' house. The ladder was placed towards the roof's peak and to the left of the porch, so he could gain access to the higher or uppermost part of the roof. The ladder was not placed next to the porch in order to use the porch in any way. The ladder was not placed next to the porch so that materials could be set upon the porch when he ascended or descended the ladder.

Additionally, at Wesley Stead's deposition, he testified to the following: The ladder was already in position before he started working on the Valentines' house. The porch was not involved in the roofing. After completing a day's work, Stead climbed onto the ladder to descend from the roof. While Stead was on the ladder, he had a five-gallon "bucket" of tar in his right hand and a pulley was on top of the bucket of tar. He was holding onto the ladder with his left hand. As he was coming down the ladder, he stopped at the deck and set the bucket and the pulley on the railing. The railing was a wooden "two by four." Then, he stepped on the railing with both feet. Next, he heard the railing start to crack, so he put his hands on the railing and his feet on the porch's floor. He walked to the middle of the porch to get his trowel and to pick up the shingles wrapping. When he was in the middle of the porch, it caved in and he fell to the ground, injuring himself. After the porch collapsed, the railing remained in place with the five-gallon bucket of tar and pulley still resting on top of it. Additionally, the following colloquy was exchanged:

"Q. So this [porch] was not in a way being used to aid you or assist you in doing your roofing job, was it?

A. Not the [porch] itself, but the railing, we used it for bracing ourselves as we're [sic] coming up the ladder or coming down like I did when I set the [tar] on there so I could climb onto the [porch].

Q. But the only reason you would climb onto the balcony was to take the paper off that you had thrown there earlier?

A. Yes."

Stead appeals, contending that his injury falls within the Act (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*). In particular, Stead argues that the trial court erroneously granted summary judgment in favor of the Valentines and the Michael Construction Co. because the porch was a "support" within the meaning of the Act. We disagree.

■■ ■ The Act was enacted to protect workers engaged in extra-hazardous occupations of working in and about construction. (*Meyer v. Caterpillar Tractor Co.* (1990), 135 Ill. 2d 1, 7-8, 552 N.E.2d 719; *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 423, 512 N.E.2d 1223.) "While the Act is to be liberally construed to effectuate this purpose, the Act was not intended to cover any and all construction activities and the hazards attendant thereto." (*Meyer v. Caterpillar Tractor Co.* (1990), 135 Ill. 2d 1, 8, 552 N.E.2d 719.) "By its terms, the Act speaks only to the peculiar hazards presented by certain support devices engaged in the enumerated structural work activities." (*Meyer,* 135 Ill. 2d at 13, citing *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 423-24, 512 N.E.2d 1223; *Long v. City of New Boston* (1982), 91 Ill. 2d 456, 467-68, 440 N.E.2d 625.) Whether a certain device falls within the Act is a matter of statutory construction and, thus, a question of law. (*Smith v. Excello Press, Inc.* (1988), 169 Ill. App. 3d 1084, 1091, 523 N.E.2d 1231, *appeal denied* (1988), 122 Ill. 2d 594, 530 N.E.2d 265, citing *Page v. Corley Cos.* (1985), 131 Ill. App. 3d 56, 58, 475 N.E.2d 571.) In determining whether a certain device falls within the Act, the following three-prong test is used: (1) the device's intended use *at the time of the injury*; (2) whether the injury had some connection with the hazardous nature of the device; and (3) whether this was the danger that the legislature attempted to alleviate. *Smith v. Excello Press, Inc.* (1988), 169 Ill. App. 3d 1084, 1091-92, 523 N.E.2d 1231, *appeal denied* (1988), 122 Ill. 2d 594, 530 N.E.2d 265; *Ashley v. Osman & Associates* (1983), 114 Ill. App. 3d 293, 297-98, 448 N.E.2d 1011.

■ Based upon our application of the test stated above to the facts of this case, we find that the Act does not apply to Stead's injury because the porch is not covered by the Act. First, at the time of Stead's injury, he used the porch in its traditionally intended purpose. He simply walked across the porch's floor to retrieve the papers and trowel that he had dropped. Stead plainly used the floor as a floor, the purpose for which it was designed. The porch's floor was not being used as a scaffold or as a support when he was injured. Second, Stead's activity, *i.e.,* walking on the porch and retrieving his trowel and the wrappers that he had dropped, is not a hazardous activity. (See *Vuletich,* 117 Ill. 2d 417, 512 N.E.2d 1223.) Third, we do not believe that Stead's actions on the porch were within the contemplation of the Act. Thus, his activity does

not constitute a protected structural work activity. Similarly, in *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 1093, 428 N.E.2d 1051, citing *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607, the court stated, "a floor is not a scaffold when it is being used merely as a walkway." Also, in *Quinn v. L.B.C., Inc.* (1981), 94 Ill. App. 3d 660, 664, 418 N.E.2d 1011, the court held that the floor of a building was not being used as a working platform *at the time of the plaintiff's injury* when the plaintiff tripped over debris on a completed floor.

However, Stead cites *Meyer v. Caterpillar Tractor Co.* (1990), 135 Ill. 2d 1, 552 N.E.2d 719, as authority for his argument that the Act applies to his action, contending that he used the railing as support for his materials and that the railing was part of the porch. In *Meyer v. Caterpillar Tractor Co.* (1990), 135 Ill. 2d 1, 12-13, 552 N.E.2d 719, the Illinois Supreme Court held that the Act applies to devices used for the support of materials, as well as workers, where the device is among those listed in the Act and the device is "erected or constructed 'for the use in the erection, repairing, alteration, removal or painting' of any of the enumerated structures." We are not persuaded by Stead's argument that the porch supported his materials. When Stead was injured, he was on the porch's floor, and the porch, even if the railing is part of the porch, was not being used as support for Stead or his materials. Additionally, there is not any evidence that the porch had been erected or constructed originally as a scaffold. It was a permanent porch. While, generally, it has been held that a permanent structure, used as a stay or temporary support, is within the broad coverage of the Act, the element of danger involved in its use and whether this was the danger which the legislature was attempting to alleviate must be considered. We do not believe, under the facts present here, that the porch, even if the railing is part of the porch, was intended by the legislature to be within the meaning of a scaffold or support erected or constructed for the use in repairing a house. A finding that the porch, again assuming that the railing is a part thereof, was a scaffold or support device would encompass a hazard extremely remote from the dangers contemplated by the Act and such a finding would be unwarranted where the hazard was unrelated to the dangers generally associated with scaffolds and supports. Further, we note "that case law clearly states that the Act should not be expanded by strained or unnatural interpretations and that this is especially true if other remedies, such as workers' compensation and tort remedies, are available to the plaintiff." *Smith v. Excello Press, Inc.* (1988), 169 Ill. App. 3d 1084, 1097, 523 N.E.2d 1231, *appeal denied* (1988), 122 Ill. 2d 594, 530 N.E.2d 265, citing *Quinlin v. Northwestern Steel & Wire Co.* (1985), 139 Ill. App. 3d 535, 538, 487 N.E.2d 1124.

Consequently, the Valentines and the Michael Construction Co. were entitled to summary judgment because the pleadings, depositions and affidavits showed that there was no genuine issue as to any material fact. (*Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 421, 512 N.E.2d 1223.) Accordingly, the circuit court of Cook County's order granting summary judgment in favor of the Valentines and the Michael Construction Co. is affirmed.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.