ROY LESCHINSKI, Plaintiff-Appellant, v. FOREST CITY STEEL EREC-TORS, Defendant-Appellee and Third-Party Plaintiff-Appellee (Missner-Lirtzman Company, Third-Party Defendant-Appellee).

First District (1st Division) No. 1—90—2486

Opinion filed February 8, 1993.

Williams & Marcus, Ltd., of Chicago (John F. Dziedziak, of counsel), for appellant.

Kralovec, Marquard, Doyle & Gibbons, Chartered, of Chicago (Nancy Jo Arnold, Sara T. Wiggs, and Daniel J. Donnelly, of counsel), for appellee Forest City Steel Erectors.

Bollinger, Ruberry & Garvey, of Chicago (John M. Stalmack and Deborah L. Nico, of counsel), for appellee Missner-Lirtzman Company.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Roy Leschinski, brought this two-count suit for injuries he sustained while working at a construction site. Defendant Forest City Steel Erectors (Forest City) was a subcontractor on the site responsible for installing metal decking, steel beams and columns for the warehouse under construction at the site. Plaintiff was an employee of the third-party defendant, the Missner-Lirtzman Company (Missner-Lirtzman), which was the general contractor for the construction project. Count I of plaintiff's complaint alleged a violation of the Structural Work Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 60), and count II sounded in negligence. Forest City and Missner-Lirtzman sought summary judgment as to count I. The trial court granted both motions and plaintiff appeals. The sole issue for review is whether plaintiff's injury occurred as a result of a violation of the Structural Work Act.[1]

Plaintiff's allegation of a violation of the Structural Work Act is based on the following facts, which appear in the record on appeal. On May 31, 1985, plaintiff was employed as a job superintendent, responsible for coordinating the various tradesmen involved in the construction of a warehouse in Northbrook. The weather on that day was sunny and windy. At about 10 a.m., plaintiff received a complaint from the foreman of a precast contractor working at the site. The foreman told plaintiff that there were sheets of metal decking blowing around on the roof and some decking blowing off the roof of the warehouse.

These sheets were 16 to 20 feet long, between 30 inches and 6 feet wide and about one-eighth of an inch thick. The metal is corrugated, with a 1½-inch dip every four inches. Generally, such sheets are welded to bar joists, then covered with insulation, roofing paper and tar.

The foreman told plaintiff that unless the loose decking sheets were tied down, the employees of the precast contractor would be sent home. Plaintiff, accompanied by a laborer, climbed a ladder to the roof in order to investigate the matter. Plaintiff could see stacks of metal decking on the roof; sheets of decking were blowing around. At this point in the construction, about three-quarters of the roof area had welded metal decking. Plaintiff saw a sheet of decking close to the edge of the welded area. Plaintiff crossed over a fire wall and walked 30 to 40 feet to grab this sheet. As plaintiff reached for this

---

[1]No issues are presented regarding the negligence count of plaintiff's complaint.

sheet, he was struck from behind by another sheet. Plaintiff was twisted around; his left ankle got caught in one of the ridges in the welded metal decking. Plaintiff fell down and the laborer helped plaintiff pull himself away from the edge of the welded area. Plaintiff was ultimately rescued from the roof by the fire department. Plaintiff suffered a broken left leg and injured his left ankle and wrist.

On May 21, 1987, plaintiff filed his complaint against Forest City. On June 1, 1989, Forest City filed its third-party complaint against Missner-Lirtzman. On October 10, 1989, Forest City filed a motion for partial summary judgment regarding the Structural Work Act claim. Forest City argued in the motion that the roof at issue was not a "support" within the meaning of the Act and that plaintiff's injury did not arise out of the hazardous nature of the devices named in the Act. Missner-Lirtzman moved to join in Forest City's motion on January 23, 1990. Following a hearing, the trial court granted the motion in favor of Forest City and Missner-Lirtzman on August 17, 1990. Plaintiff timely filed a notice of appeal to this court, pursuant to Illinois Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

Summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Alop v. Edgewood Valley Community Association* (1987), 154 Ill. App. 3d 482, 484, 507 N.E.2d 19, 21.) In order to withstand a motion for summary judgment, the nonmoving party must come forward with evidentiary material that establishes a genuine issue of material fact. (*Salinas v. Chicago Park District* (1989), 189 Ill. App. 3d 55, 545 N.E.2d 184.) Absent an abuse of discretion by the trial court, summary judgment will not be reversed. *Fearon v. Mobil Joliet Refining Corp.* (1984), 131 Ill. App. 3d 1, 475 N.E.2d 549.

The issues raised on appeal relate solely to plaintiff's Structural Work Act claim. Section 1 of the Act provides as follows:

"[A]ll scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the fall-

ing of any material that may be used or deposited thereon." Ill. Rev. Stat. 1985, ch. 48, par. 60.

The Act was enacted to protect workers engaged in extra-hazardous occupations of working in and about construction. (*Meyer v. Caterpillar Tractor Co.* (1990), 135 Ill. 2d 1, 7-8, 552 N.E.2d 719, 721; *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 423, 512 N.E.2d 1223, 1225.) "While the Act is to be liberally construed to effectuate this purpose, the Act was not intended to cover any and all construction activities and the hazards attendant thereto." (*Meyer*, 135 Ill. 2d at 8, 552 N.E.2d at 721.) The Act does not provide a remedy where other reasonable and satisfactory remedies are available. See *American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 24.

On appeal, the parties primarily discuss whether the roof deck falls within the scope of the Act. Whether a certain device falls within the Act is a matter of statutory construction and, thus, a question of law. (*Stead v. Valentine* (1991), 218 Ill. App. 3d 1002, 1005, 578 N.E.2d 1227, 1229; see *Heino v. Mellon Stuart Co.* (1991), 222 Ill. App. 3d 147, 150, 583 N.E.2d 697, 699.) In determining whether a certain device falls within the Act, courts examine: (1) the device's intended use at the time of the injury; (2) whether the injury had some connection with the hazardous nature of the device; and (3) whether this was the danger that the legislature attempted to alleviate. (*Stead*, 218 Ill. App. 3d at 1005, 578 N.E.2d at 1230.) Here, the parties have raised issues involving the first two factors; we therefore address each in turn.

Initially, the parties contest whether the roof of the warehouse functioned as a "support" at the time plaintiff was injured. A roof temporarily used as a scaffold is a device covered by the Structural Work Act. (*St. John v. R.R. Donnelley & Sons Co.* (1973), 54 Ill. 2d 271, 296 N.E.2d 740.) Similarly, a roof may be a "support" within the ambit of the Act, given the proper set of circumstances. (See *Heino v. Mellon Stuart Co.* (1991), 222 Ill. App. 3d 147, 151, 583 N.E.2d 697, 700.) Nevertheless, a permanent structure, such as a roof, is not considered a scaffold " 'when it is being used merely as a walkway.' " (*Stead*, 218 Ill. App. 3d at 1006, 578 N.E.2d at 1230, quoting *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 1093, 428 N.E.2d 1051, 1057.) That a roof may incidentally function to elevate a worker does not mandate the conclusion the roof is being used as a platform to perform the types of work specified in the Act. (*Bolsmo v. Mark V Roofing Co.* (1989), 190 Ill. App. 3d 334, 336-37, 546 N.E.2d 634, 636.) Finally, we note that the Act applies to devices used to sup-

port materials as well as devices used to support workers. See *Meyer*, 135 Ill. 2d at 13, 552 N.E.2d at 724.

■ The previous decision of this court in *Quinlin v. Northwestern Steel & Wire Co.* (1985), 139 Ill. App. 3d 535, 487 N.E.2d 1124, in which the plaintiff was similarly struck by a metal sheet caught by the wind while plaintiff was working in and around a roof deck, is not determinative of this issue. In that case, we held that "plaintiff was using the roof *** as a support for himself at the time of the injury." (*Quinlin*, 139 Ill. App. 3d at 538, 487 N.E.2d at 1126.) In contrast, the record here indicates that plaintiff went onto the welded portion of the roof to retrieve and secure loose sheets of decking. Moreover, plaintiff stated in his deposition that he used the roof as a walkway. Given this record, plaintiff has failed to show that the roof deck was serving as a support for a worker within the meaning of the Act when plaintiff was injured.

Nevertheless, the record here indicates that the welded portion of the roof was being used to store stacks of decking sheets that had yet to be welded to the bar joists. Thus, at the time plaintiff was injured, it appears that the roof deck was being used as a device for the support of construction materials used in the erection of the warehouse. Consequently, we conclude that plaintiff has shown that the roof was a "support" for materials within the scope of the Act, given the facts and circumstances presented in this case. *Meyer*, 135 Ill. 2d at 12, 552 N.E.2d at 724.

Plaintiff contends that his injury is connected to the hazardous nature of the device. On this point, plaintiff notes that in *Quinlin*, this court affirmed the summary judgment granted to the defendants, stating:

> "Plaintiff has not *** identified any defect in the support provided or indicated any failure on the part of defendants to provide an adequate support. There is no evidence in the record that the roof did not adequately perform as a temporary support. It supported both the plaintiff and the metal sheets. Plaintiff's injury did not arise out of the hazardous nature of those devices specified in the Act. Rather, the hazard which caused plaintiff's injury was a gust of wind." (*Quinlin*, 139 Ill. App. 3d at 538, 487 N.E.2d at 1126.)

Plaintiff contends that this case is distinguishable from *Quinlin* by arguing that the corrugation of the roof deck rendered it unsafe as a support and a contributing cause of his injuries. The parties also vigorously debate whether plaintiff's deposition testimony that there was

no defect in the roof causing his fall, given subject to plaintiff's attorney's objection, may be used as a judicial admission on this point.

■■ We need not delve into these arguments to resolve the larger issue. In order to recover under the Act, both the damage and the alleged defect must relate to the function of the device as a support. (*Dvorak v. Primus Corp.* (1988), 168 Ill. App. 3d 625, 631, 522 N.E.2d 881, 885.) We have already noted that plaintiff has failed to show that the roof deck in this case functioned as a support for a worker (within the meaning of the Act) at the time of plaintiff's injury. Thus, unlike *Quinlin*, the question of whether the roof deck was an adequate support for a worker at the moment of injury need not be addressed here. We need only address whether the roof deck adequately supported the materials.

Plaintiff argues that the roof was an inadequate support for materials because Forest City left unsecured metal sheets on the roof, where they were exposed to high winds. The argument is misplaced, for it addresses the alleged acts or omissions of Forest City in regard to the unsecured sheets and does not indicate that there was something about the roof itself which rendered it unsafe as a support for the metal sheets. The fact that the roof is elevated proves nothing, for almost any device within the scope of the Act will be elevated. That the metal sheets were exposed to high winds similarly says nothing about the roof as a support for those sheets. We also note that our supreme court, in determining that the Act applies to devices that support materials, reasoned that the Act refers to persons "passing under or by" such devices who may be injured. (*Meyer*, 135 Ill. 2d at 12, 552 N.E.2d at 723-24.) This appeal does not involve such an injury.

Plaintiff asserts that he was engaged in extrahazardous activity at the time he was injured. It does not necessarily follow, however, that such activity falls within the scope of the Act. Even if a device is among those listed in the Act,

> "the device must be erected or constructed 'for the use in the erection, repairing, alteration, removal or painting' of any of the enumerated structures. By its terms, the Act speaks only to the peculiar hazards presented by certain support devices engaged in the enumerated structural work activities." (*Meyer*, 135 Ill. 2d at 13, 552 N.E.2d at 724, citing *Vuletich*, 117 Ill. 2d at 423-24, 512 N.E.2d at 1224; *Long v. City of New Boston* (1982), 91 Ill. 2d 456, 467-68, 440 N.E.2d 625, 630.)

Thus, in *Meyer*, our supreme court concluded that the unbanding or unbundling of storage racks prior to their incorporation into a structure is not structural work activity. (*Meyer*, 135 Ill. 2d at 13, 552

N.E.2d at 724.) In addition, the *Meyer* court stated that the use of a crane or forklift to support the racks during the unbanding or unbundling process would not have brought the case within the scope of the Act. *Meyer*, 135 Ill. 2d at 14, 552 N.E.2d at 724-25.

The record in this case indicates that plaintiff was attempting to secure the loose sheets of metal, prior to their incorporation into a structure, just as the plaintiff in *Meyer* was unbanding or unbundling storage racks. The record indicates that the roof deck was serving as a support for the metal sheets, just as a crane or forklift could have supported the racks in *Meyer*. Consequently, plaintiff has failed to present a question of material fact as to whether his activities here were within the scope of the Act.

Viewed from a different perspective, the question of whether the device is within the scope of the Act is but one of the elements needed to state a claim or survive summary judgment in a Structural Work Act case. In order to recover under the Act, plaintiff must also be able to show that he was engaged in or was passing by structural work activity at the time of his injury. (See, *e.g.*, *Long*, 91 Ill. 2d at 467-68, 440 N.E.2d at 630.) Plaintiff has failed to establish a question of material fact as to whether he was engaged in or passing by structural work activity when he was injured. Nor has plaintiff presented a question of material fact as to whether his activity was integral to the erection of the structure, given the record on appeal. (See *Meyer*, 135 Ill. 2d at 10-11, 552 N.E.2d at 723 (discussing *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 317 N.E.2d 573).) We therefore conclude that the trial court did not abuse its discretion in granting summary judgment on plaintiff's claim under the Act.

For the aforementioned reasons, we affirm the judgment of the circuit court of Cook County and remand for further proceedings.

Affirmed and remanded.

MANNING, P.J., and BUCKLEY, J., concur.