HOWARD C. OVERBECK, Plaintiff-Appellant, v. JON CONSTRUCTION, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—87—2875

Opinion filed June 20, 1989.

Edward J. Kionka, of Murphysboro (W. Joseph Hetherington, of counsel), for appellant.

Cassiday, Schade & Gloor, of Chicago (Richard Barrett, Michael Gallagher and Susan Seiwert, of counsel), for appellees Jon Construction, Inc., and The Alter Group, Ltd.

Wildman, Harrold, Allen & Dixon, of Chicago (John Stalmack and David Kanter, of counsel), for appellee Shick Tube-Veyor Corporation.

Modesto, Reynolds & McDermott, of Chicago (James Hynes, of counsel), for appellee A. Epstein & Sons, Inc.

Aries, Hoyt & Taden, of Chicago (William Waller, of counsel), for appellee Air Process Systems & Conveyors Company.

Laughlin, Cunningham, Hare & Fanone, of Chicago (William Hare, of counsel), for appellee Bake-Line Products, Inc.

JUSTICE HARTMAN delivered the opinion of the court:

This appeal is from the circuit court's order granting defendants' motions for summary judgment as to count I of plaintiff's second amended complaint, alleging that defendants violated the Illinois Structural Work Act (Ill. Rev. Stat. 1983, ch. 48, par. 60) (Act). Count II of the second amended complaint is a negligence count. Summary judgment was granted as to count I for the reasons that the ladder involved in the accident was not defective, the placement of the ladder did not violate the Act, and no violation of the Act proximately caused plaintiff's injuries. The court denied summary judgment motions as to count II, which is pending, and found that there was no just reason to delay enforcement or appeal of the order.

Plaintiff contends that the pleadings and depositions establish factual issues as to whether the placement of the ladder constituted a violation of the Act and as to whether that violation was a proximate cause of plaintiff's injuries, thereby making the disposition of count I erroneous.

Plaintiff, electrician Howard C. Overbeck, employed by defendant Rossett Electric Co., was seriously injured on August 25, 1983, while working on the installation of electrical wiring in the Bake-Line Products plant being constructed by defendants in Des Plaines, Illinois. Defendants are the owner, architect and contractors of the project, a bakery plant.

On August 24, 1983, plaintiff and another electrician, Jim Patterson, were working under the supervision of the foreman of Rossett Electric Co., who instructed them to run conduit in the second floor of the bakery plant from the switch gear in an electrical panel in the wire room to machinery in the mixing room. The mixing room and wire room shared a common wall. The wire room was approximately 6 feet by 12 feet in dimension. A large table, which measured approximately 4 feet by 8 feet, was placed in the wire room partially blocking the door. Another workman used this table that day to do metering work unrelated to plaintiff's electrical wiring tasks.

Plaintiff and Patterson began their work by making openings approximately 1½ inches wide and six to seven inches apart from each other in the wall between the wire room and the mixing room. These

openings were approximately 12 to 14 feet above the floor. Standing on the sixth or seventh step of an "A-frame" ladder, they first cut openings in the wire room wall and then went into the mixing room and continued making openings on that side of the same wall.

The electrical panel had already been installed on the wire room wall and was situated below the holes which plaintiff and Patterson made in the wall. The panel was about 8 feet high, 30 inches wide, and 8 to 10 inches deep. Plaintiff and Patterson were instructed to put the conduit and the wire into a disconnect switch in the panel. They tested the panel for voltage and determined it was dead. After punching holes in the panel to receive the conduit and the wire, they bent the conduit and ran it through the panel to the two machines in the mixing room. By the end of the work day on August 24, plaintiff and Patterson still needed to run more conduit into the machines' control panel and pull more wire through the conduit.

On August 25, 1983, plaintiff and Patterson continued their work. The large table remained in the same position in the wire room, but the technician who had been working there the previous day was not present. The A-frame ladder which they used the day before was used again on the 25th. There were no defects in the ladder. The ladder was placed almost against the panel on the wall. The ladder's legs were partially placed under the table because of the close dimensions of the wire room and the location of the table.

After plaintiff and Patterson finished running conduit, they began to run the wire through it. This was accomplished by the use of a "fish tape," a device used to push and pull wire through the conduit. Patterson again tested the panel for voltage, finding it dead. Patterson began pushing the wire through the conduit with the fish tape, sending it from the machinery in the mixing room through the conduit, through the wall, and into the wire room.

The typical procedure for the electrical wiring task is for the electrician who is pushing the fish tape through the conduit to listen for the other electrician to tell him when to stop pushing and to feel the other electrician grab the fish tape. This informs the electrician pushing the wire that it has been received on the other side and that he should stop pushing it through. Patterson was to wait until plaintiff was ready on the receiving end before pushing the wire and the fish tape through the conduit. Plaintiff walked from the mixing room to the wire room.

As plaintiff entered the wire room, he squeezed between the table and the door, got around the table, and reached the ladder when he heard a noise, looked up and saw the tape coming through. At his

deposition, taken December 15, 1986, the events which followed were described by plaintiff in answers to questions put to him by defendants' counsel.

"Q. When the explosion occurred, had you already arrived up on the ladder and stabilized yourself?

A. I was up there, my hand was right in there.

Q. When you got up the ladder, you stated there was some wiggling or wobbling of the ladder.

A. I was coming on from the side, it wobbled.

Q. So at that point is when the wobbling occurred?

A. Yeah.

Q. Once you reached the—did you go all the way to the top of the ladder or just a step or two below?

A. I just went up a couple.

Q. When you got to that point in the ladder and stopped, did the ladder stop wobbling?

A. Yes, right.

Q. When you got to that point in the ladder, did you yell anything to Mr. Patterson or hear anything yelled by him to you?

A. I hollered to stop.

Q. Was there any indication by Mr. Patterson that he heard you?

A. Evidently he didn't hear me.

Q. So when you got to the top of the ladder, were you able to see the fish tape coming through the conduit?

A. Oh, yes, yeah.

Q. When you were on the—when you stopped on the ladder, did you see it continuously coming through?

A. Well, I reached up there."

Plaintiff was unable to reach the fish tape in time to stop its movement before the wire it carried hit a hot bus, causing an explosion. When the explosion occurred, plaintiff was thrown off the ladder and onto the floor. The ladder did not fall.

Plaintiff contends that the circuit court erred in granting summary judgment as to the Act, because the pleadings and depositions in the record raise genuine issues of material fact concerning defendants' violation thereof and whether such violation was a proximate cause of plaintiff's injury.

■■ ■ Plaintiff argues that whether a structural device is safe and proper under the Act is a question of fact to be decided by a jury; however, whether a plaintiff's injury is directly related to the specific

ultrahazardous risks protected by the Act initially is to be determined by the court. (*Smyrniotis v. Brockob Construction Co.* (1986), 142 Ill. App. 3d 340, 491 N.E.2d 1246.) The hazard of an explosion is not related to structural work (*Clow v. Metropolitan Sanitary District* (1983), 120 Ill. App. 3d 712, 714, 461 N.E.2d 40), nor are hazards of high voltage wires and electricity. *Smyrniotis*, 142 Ill. App. 3d 340, 491 N.E.2d 1246; *Kochan v. Commonwealth Edison Co.* (1984), 123 Ill. App. 3d 844, 463 N.E.2d 921; *St. John v. City of Naperville* (1982), 108 Ill. App. 3d 519, 439 N.E.2d 12.

■ There is no claim in this case that the ladder upon which plaintiff was standing was defective. It did not move after he reached the top of the ladder. Plaintiff conceded, at his deposition, that once he got on the ladder "squarely, it balanced out and it was all right." He admitted further that when he reached in the direction of the fish tape, the ladder was stable and did not move when he leaned inside the switch panel to get the fish tape. Plaintiff was supported by the ladder; its condition did not cause his injuries. They were caused by the electrical explosion which could have been prevented had Patterson not pushed the fish tape through the conduit before plaintiff was in position to guide it. This was a condition that had no connection with the ladder.

■ Plaintiff nevertheless insists that the Act and the case law construing it require that the scaffold device must not only be safely constructed, but also placed and operated to give proper and adequate protection to the worker using it. Plaintiff emphasizes the presence of a table in the wire room, which required him to squeeze through the doorway and delayed his reaching the switch panel to catch the fish tape before the tape came in contact with the energized bus bar. He also claims that he was further delayed because the ladder was placed in such a way that he could not mount the first step of the ladder and had to swing his leg from the side of the ladder up to the second step. The placement of a ladder makes it defective only when the placement creates one of the hazards protected by the Act, which provides, in part, that a ladder must be placed to give adequate protection to those upon it. Ladder placement, therefore, goes to the issue of support.

■ Plaintiff testified at his deposition that he utilized the ladder in the same position on the previous day, August 24. In answer to a question of whether the ladder wiggled or moved in any way when he climbed it that day, plaintiff answered, *"I was never in that much of a hurry to get up there, so it was fairly stable then."* (Emphasis added.) Because he was in a hurry on the day of the accident, the ladder wob-

bled as he climbed onto it; however, even then it stabilized before he reached the top and before the explosion. These facts do not establish a violation of the Act. To the contrary, the evidence demonstrates the ladder's capacity to support him and does not create a question of fact as to whether there was a violation of the Act.

The issues presented here solely relate to alleged negligence. In this branch of the case the fact finders can consider the effect the placement of the table had upon the time it took for plaintiff to reach his position on the ladder. What also may be considered are whether Patterson started pushing the fish tape at the appropriate time, whether there are missed signals, the speed with which Patterson pushed the fish tape through the conduit and what effect, if any, these circumstances had upon the proximate cause of plaintiff's injuries. They cannot be considered to have created a hazard protected against by the Act.

Cases relied upon by plaintiff reinforce defendants' position that placement of the ladder goes to the issue of support. In *McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 338 N.E.2d 868, the placement of the ladder on a sloped driveway covered with dirt and debris caused the ladder to move, resulting in plaintiff's fall. In *Bishop v. Crowther* (1980), 92 Ill. App. 3d 1, 415 N.E.2d 599, the placement of the ladder in an uneven and muddy area caused the ladder to slip, which caused the ladder to fall. In *Zizzo v. Ben Pekin Corp.* (1979), 79 Ill. App. 3d 386, 398 N.E.2d 382, plaintiff was injured when the ladder moved, causing him to sustain a back injury. In *Mathieu v. Venture Stores, Inc.* (1986), 144 Ill. App. 3d 783, 494 N.E.2d 806, a ladder placed against concrete panels moved, causing plaintiff then to jump from the ladder to his injury. In *Ryan v. E.A.I. Construction Corp.* (1987), 158 Ill. App. 3d 449, 511 N.E.2d 1244, a scaffold upon which plaintiff was working was placed against an improperly supported wall which collapsed, causing plaintiff to fall and land with debris dropping on top of him.

Plaintiff places considerable reliance upon a third district case, *Brazier v. Kontos* (1987), 160 Ill. App. 3d 177, 513 N.E.2d 152. There, plaintiff contacted electrical wires while descending from a ladder. Placement of the ladder affected plaintiff's ability to climb down safely. In the present case, plaintiff was able to climb up and down the ladder safely and, on both August 24 and 25, he did so. The *Brazier* court cited only one case, *Smith v. Georgia Pacific Corp.* (1980), 86 Ill. App. 3d 570, 408 N.E.2d 117, on this point. In *Smith*, however, plaintiff was on a ladder which fell after he "jumped" it (moved the ladder a few inches while remaining on it), and the court there held

the ladder to have been placed in an unsafe manner since its bases rested on railroad ties which were cracked and uneven. Further, the *Brazier* court did not address or distinguish the decisions of *Kochan v. Commonwealth Edison Co.* (1984), 123 Ill. App. 3d 844, 463 N.E.2d 921, and *Smyrniotis v. Brockob Construction Co.* (1986), 142 Ill. App. 3d 340, 491 N.E.2d 1246, first district cases which noted, as we do, the distinction between hazards protected by the Act and hazards which are not, *i.e.*, electrocution, explosion, or tripping. We elect to follow first district cases which we believe were correctly decided. *Bresland v. Ideal Roller & Graphics Co.* (1986), 150 Ill. App. 3d 445, 457, 501 N.E.2d 830; *Glasco Electric Co. v. Department of Revenue* (1980), 87 Ill. App. 3d 1070, 409 N.E.2d 511, *aff'd* (1981), 86 Ill. 2d 346, 427 N.E.2d 90.

Accordingly, we affirm.

Affirmed.

SCARIANO and EGAN*, JJ., concur.

---

*Justice Egan participated in the decision of this case before his assignment to the sixth division.