DEBRA F. GLAZIER, Widow of Mark J. Glazier, Deceased, *et al.*, Plaintiffs-Appellants, v. AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Trustee, *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—93—0251

Opinion filed February 8, 1995.—Rehearing denied May 12, 1995.

Paul D. Geiger and Joseph V. Roddy, both of Chicago, for appellants.

David M. Smith and Carolyn M. Diggins, both of Schoen & Smith, Ltd., of Chicago, for appellees Gerald M. Greenberg and Scott D. Greenberg.

William J. Oberts, Edward M. Kay, and Imelda Terrazino, all of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago, for appellee STS Consultants, Ltd.

Ernest L. Wojcik, of O'Brien, Hanrahan, Wojcik & Fay, of Chicago, for appellee Charles Canali.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff, the estate of the decedent, Mark J. Glazier, sought damages for Glazier's death, which resulted from an explosion that occurred in a caisson hole at a construction site. Defendants Chicago Mini-Storage III, Ltd., Limited Partnership; Scott and Gerald Greenberg, d/b/a ECD, Inc.; STS Consultants, Ltd.; Charles Canali; and Accurate Drilling and Trenching, Inc. (Accurate Drilling), filed a motion for summary judgment on plaintiff's Structural Work Act (Act) (740 ILCS 150/1 et seq. (West 1992)) claims. The trial court granted the summary judgment in favor of defendants with a Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) finding. On appeal, plaintiff asserts that the summary judgment was improper because there remained the issue of whether the ground was a support that failed because it was saturated with methane gas, which caused the fatal fire. We affirm for the reasons that follow.

Defendants Chicago Mini-Storage and the Greenbergs hired STS, an engineering consultant firm, and Canali as subcontractors on the project known as the Deerfield Tech Center Development. Canali subcontracted with Accurate Drilling, which employed the decedent.

The project site was an old landfill with loosely broken bricks, sand, and gravel covered with clay. Accurate Drilling was responsible for drilling holes below ground for caissons to be filled with concrete. These concrete pillars would subsequently provide the structural support for the building under construction.

Al Glazier, decedent's brother, stated in his deposition that he, decedent, and a third person were working for Accurate Drilling on the project when the explosion occurred. While the crew was drilling the hole involved in the explosion, they hit an obstruction at 10 to 12 feet. After they placed a caisson in the hole to prevent a cave-in, Al Glazier lowered a lit oxygen acetylene cutting torch to test for the presence of gas. This was done as a safety precaution because the crew was aware that methane gas could be present. Nothing happened when the lit torch was lowered.

Al Glazier then went into the hole to remove the obstruction with a shovel. He spent 15 to 20 minutes in the hole, but could not remove the obstruction. Other than becoming claustrophobic, Al Glazier did not feel any physical effects that would normally result from the inhalation of methane gas. Minutes after he came up, the decedent went into the hole to cut the obstruction with a torch.

While the decedent was standing at the bottom of the hole, an unlit oxygen acetylene torch was lowered down to him. He lit the torch and an explosion occurred. After the explosion, Al Glazier saw two-foot flames at the bottom of the hole, but the hole did not cave in or collapse. The decedent suffered burns to 70% of his body and died

nine days later. All of his injuries were caused by the explosion. The decedent did not sustain any injuries as a result of a cave-in of the cased hole, from a collapse of the bottom of the hole, or from the bottom of the hole failing to support his body.

The decedent's widow and his two minor children filed a complaint against numerous defendants connected with the construction project. The trial court granted summary judgment in favor of defendants on Structural Work Act claims.

The issue is whether the methane gas, if present, was integral to the ground, which was the support, or was an ambient hazard. Plaintiff's argument is that the placement of the caisson hole was the cause of the ground failing to support the decedent because gas permeated the ground where it was placed.

Plaintiff contends that the trial court erred when it relied on *American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 594 N.E.2d 313, where the plaintiff's injuries were not covered by the Act. After the plaintiff climbed a ladder to the top of a billboard, he was electrocuted when he came in contact with a high voltage power line above the sign. (*American National Bank*, 149 Ill. 2d at 18.) The court concluded that the Act is meant to insure only that a structure provides proper support, not that the structure be placed where the worker will be free from ambient hazards. *American National Bank*, 149 Ill. 2d at 23-24.

Plaintiff distinguishes the electrical wires that were near the ladder in *American National Bank* on the basis that the ground in the ditch failed because it was saturated with methane gas, which caused the explosion. Plaintiff maintains that the hazard of the methane gas was an intrinsic part of the support, not an ambient hazard that surrounded the ground.

In response, defendants assert that the Act does not apply because the decedent's injuries were not caused by a defect or failure of the ground to provide adequate support, but by an explosion. Defendants contend that the decedent did not fall, the ground did not fail to support him, and the ground used as a support did not proximately cause his injuries. Defendants maintain that the gas surrounded the interior of the hole, which remained stable.

For the following reasons, we affirm. The hazard in this case is analogous to those involving electrocutions and explosions, which are not protected by the Act. See *American National Bank*, 149 Ill. 2d 14, 594 N.E.2d 313 (the plaintiff was injured by a nearby power line, which was an ambient hazard); *Bodam v. City of Chicago* (1993), 241 Ill. App. 3d 937, 609 N.E.2d 802 (after being electrocuted, the plaintiff fell off a ladder, which was not defective or unstable); *Overbeck v. Jon*

*Construction, Inc.* (1989), 184 Ill. App. 3d 918, 540 N.E.2d 969 (injuries were caused by an explosion that knocked him off a ladder, not by the failure or condition of the ladder); *Smyrniotis v. Brockob Construction Co.* (1986), 142 Ill. App. 3d 340, 491 N.E.2d 1246 (injuries were caused by overhead power lines, not by failure of a support); *Kochan v. Commonwealth Edison Co.* (1984), 123 Ill. App. 3d 844, 463 N.E.2d 921 (injuries were not caused by a defect in the construction or use of the ladder, but by overhead electrical lines); *Clow v. Metropolitan Sanitary District of Greater Chicago* (1983), 120 Ill. App. 3d 712, 461 N.E.2d 40 (the plaintiff was struck by a plank on which he was standing when an explosion occurred below the planking); *St. John v. City of Naperville* (1982), 108 Ill. App. 3d 519, 439 N.E.2d 12 (assuming *arguendo* the ground in the ditch was a scaffold, injury was not caused by a failure of the ground in the ditch where the plaintiff was standing, but by nearby electrical wires).

The Structural Work Act provides in relevant part:

> "All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed *** for the use in the erection *** of any *** building *** shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." 740 ILCS 150/1 (West 1992).

The Act is intended to insure stable support to a construction worker and provide him or her with a remedy when no other remedy is available. (*American National Bank,* 149 Ill. 2d at 25.) While the Act is to be liberally construed to protect workers engaged in dangerous and extrahazardous occupations, it is not intended to cover any and all construction activities or all injuries at or near a construction site. (*Meyer v. Caterpillar Tractor Co.* (1990), 135 Ill. 2d 1, 7, 552 N.E.2d 719.) Instead, the inquiry should focus on the particular circumstances surrounding the occurrence of the injury. *Pozzi v. McGee Associates, Inc.* (1992), 236 Ill. App. 3d 390, 397, 602 N.E.2d 1302.

The Act does not apply to an injury unless that injury has some direct connection with the hazardous nature of the devices named in the Act. (*Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 371, 325 N.E.2d 607.) The Act's protective measures are directed toward preventing hazards such as workers falling from a structure, a structural device falling, or workers being struck or crushed by materials due to insufficient support. (*American National Bank,* 149

Ill. 2d at 23-24; *Tenenbaum,* 60 Ill. 2d at 371.) Generally, an explosion is not related to structural work. *Overbeck,* 184 Ill. App. 3d at 925; *Clow,* 120 Ill. App. 3d at 714.

■ We conclude that any gas present was an ambient hazard that surrounded the ground, not an integral part of the ground, which was the support. The ground did not fail since it did not cave in or collapse. Instead, it continued to provide stable support.

In the context of the Act, summary judgment is appropriate where the material facts are not in dispute and the controversy is over the proper construction of the Act and whether the facts sustain a cause of action. (*Kochan,* 123 Ill. App. 3d at 848, 463 N.E.2d at 925.) Whether the Act covers the decedent's injuries is a question of law because it is a matter of statutory construction. (*Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 421, 512 N.E.2d 1223.) Since there was no defect in the construction or use of the ground, summary judgment in favor of defendants was proper.

We decline to broaden the Act's scope with the expansive interpretation suggested by plaintiff.

"Plaintiff *** has urged the court to extend the Act to encompass a hazard extremely remote from those dangers contemplated by the legislature when it enacted the statute. Such an expansion of the Act is both unwarranted and unnecessary here, where the hazard is unrelated to the dangers associated with scaffolds or supports [citation] and the plaintiff is free to pursue other theories of recovery." *Smyrniotis,* 142 Ill. App. 3d at 346-47.

Under the circumstances in this case, the Act does not apply as a matter of law. Accordingly, we affirm the circuit court judgment.

Affirmed.

GREIMAN, P.J., concurs.

JUSTICE TULLY, dissenting:

I must respectfully dissent from the majority's opinion. I believe this is exactly the type of incident for which the Structural Work Act provides a remedy.

It is the desire to prevent injuries to workers engaged in structural work and place the full responsibility for the prevention of such injuries on contractors and their clients that animates the Structural Work Act (Act) (740 ILCS 150/1 *et seq.* (West 1992)). (*Pozzi v. McGee Associates, Inc.* (1992), 236 Ill. App. 3d 390, 602 N.E.2d 1302.) The majority's narrow view of the Act's reach runs contrary to the spirit and intent of the law as well as our obligation to liberally

construe it in order to effectuate its clear legislative purpose. *Ponziano v. K.R. Kleiner & Co.* (1991), 216 Ill. App. 3d 22, 576 N.E.2d 158.

Under the Act, a plaintiff must show: (1) the device involved is one enumerated in the Act; (2) the device was used to complete a building or structure; (3) the device was unsafe, not safely placed or operated, or there was a failure to provide such a device; (4) those in charge of the work wilfully violated the Act; and (5) the violation of the Act proximately caused the plaintiff's injury. *Pozzi v. McGee Associates, Inc.* (1992), 236 Ill. App. 3d 390, 602 N.E.2d 1302.

The Act applies to those instances where the resultant injury to the worker has a direct connection with the hazardous nature of the devices in the Act. (*Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 371, 325 N.E.2d 607.) Clearly, the injury to the decedent in this case was a result of the hazards presented by the presence of methane gas at the construction site. The ground was impregnated with methane gas, the ignition of which proved to be the proximate cause of his death.

The majority advance two propositions which support their conclusion, both of which are flawed. First, they analogize the danger inherent in the presence of methane gas in this case to cases where the worker was injured by electrocution or explosions which were not covered by the Act. Second, the majority contend the Act is only applicable to those cases where the device failed to provide support for the worker causing his injuries to be sustained by a fall from that support.

The majority opinion recognizes that the ground upon which plaintiff stood at the time of the accident was in fact a support device as defined by the Act but then goes on to reject the logical conclusion that the presence of methane gas was an intrinsic part of this support which rendered that support unsafe. Instead, the majority conclude that "any gas present was an ambient hazard that surrounded the ground, not an integral part of the ground, which was the support." 271 Ill. App. 3d at 1102.

A review of the record indicates that the structure in this case was being erected on property which at one time was a landfill. It is a scientifically proven fact that landfill sites secrete methane gas which is created by the natural decomposition of the waste buried under the ground; a fact which was known to all the parties in charge of this project. To deny that this gas was an intrinsic part of the chemical makeup of the ground is to deny the teachings of modern science and to deny the reality of this situation. The gas does not surround the ground nor is it near the ground; it is part of the essence of the ground at this site.

Charles Canali, the general superintendent on the jobsite, testified to the fact that the parties in charge of the construction were aware of the presence of methane gas and were concerned about the hazardous and potentially dangerous conditions which existed. In fact, STS Consultants, Ltd., was engaged by the owner of the property to perform engineering and consulting services including testing the soil for the presence and emission of methane gas at the construction site. Canali further testified that he was aware of gases escaping from the ground prior to the date of decedent's accident. Additional testimony from one of decedent's co-workers revealed that fires had burned in other holes on this very jobsite prior to this accident.

The majority cite *Overbeck v. Jon Construction, Inc.* (1989), 184 Ill. App. 3d 918, 540 N.E.2d 969, and *Clow v. Metropolitan Sanitary District of Greater Chicago* (1983), 120 Ill. App. 3d 712, 461 N.E.2d 40, for the general proposition that explosions are generally not related to structural work. While I agree with the result in both of those cases, I do not believe they are analogous to the facts of the case at bar. In both of those cases, the plaintiff was standing on a support mechanism as defined in the Act when a *nearby* explosion shook the support causing the plaintiff to fall and sustain injuries. The explosion was not in any way caused by a defect within or related to the unsafe condition of the support itself. In *Clow*, the explosion was caused by the ignition of propane gas or diesel fuel which was on the site for the purpose of heating and melting ice. The court in *Clow* stated, "[a] structure does not have to protect a workman from every hazard in the workplace, only hazards relating to structural work. An explosion is not, in our estimation, related to structural work." (*Clow*, 120 Ill. App. 3d at 714.) Here, however, it was in fact a defect *within* the support, the methane gases permeating the ground, which ignited, causing the explosion and thereby proximately causing decedent's injuries. This is exactly the type of injury the Act is intended to remedy—one where a plaintiff is directly injured by the hazardous nature of the support device utilized during the course of a construction project.

Similarly, in *Overbeck*, the support itself was not defective or unsafe; the explosion of nearby electrical equipment caused plaintiff's injuries. In fact, Overbeck did not even make a claim that the ladder he was utilizing was defective. Clearly, this is distinguishable from this instant case where the support, the ground upon which decedent was standing, was in an unsafe condition due to the presence of methane gas which did in fact ignite and cause decedent's injuries.

The majority's second premise, upon which they base their opinion, is as equally faulty as the first. The majority opinion concludes, "[t]he ground did not fail since it did not cave in or col-

lapse. Instead, it continued to provide stable support." (271 Ill. App. 3d 1102.) It is disingenuous to argue that the Act is only applicable to those situations where a worker's injury is the result of the support failing to bear his weight yet hold the same remedy is not available where the support in some other way creates a hazard which results in injury to a worker. Plaintiff should not be precluded from recovery simply because the ground did not cave in or otherwise fail to hold the decedent. The statute clearly states the support shall be "placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon." (740 ILCS 150/1 (West 1992).) It is clear in this case that the life and limb of the decedent were imperiled by the very support upon which he relied during the performance of his duties. A support that blows up clearly does not provide support. I do not believe decedent should now be denied a remedy under the Act because his injury was not the result of a fall from a scaffold.

In light of the foregoing, I would reverse and remand this case to the circuit court for further proceedings consistent with the view contained herein.