# Illinois Official Reports

## Appellate Court

---

**Fireman's Fund Insurance Co. v. Rockford Heating & Air Conditioning, Inc.,**
**2014 IL App (2d) 130566**

---

| | |
|---|---|
| Appellate Court Caption | FIREMAN'S FUND INSURANCE COMPANY, as Subrogee of First Rockford Group, Inc., Plaintiff-Appellant, v. ROCKFORD HEATING AND AIR CONDITIONING, INC., Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-13-0566 |
| Filed | April 23, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff insurer's subrogation action seeking to recover from defendant heating company for damages caused by a fire at a commercial building plaintiff's insured had under construction was properly dismissed as untimely under the four-year limitations period in section 13-214(a) of the Code of Civil Procedure, notwithstanding plaintiff's contentions that the ventilation system defendant installed caused the fire, was temporary and did not constitute an "improvement to real property" for purposes of section 13-214(a), since the ventilation system, although temporary, was essential to the improvement of the property and fell within the scope of section 13-214(a). |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 12-L-143; the Hon. J. Edward Prochaska, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Scott J. Larsen and Michael C. Keefe, both of Larsen Law Firm, P.C., of Chicago, for appellant. |
|---|---|
| | John W. France and Chantel R. Bielskis, both of Cicero, France, Barch & Alexander, P.C., of Rockford, for appellee. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Justice Hutchinson concurred in the judgment and opinion. Justice Hudson dissented, with opinion. |

**OPINION**

¶ 1 Plaintiff, Fireman's Fund Insurance Company (Fireman's Fund), as subrogee of First Rockford Group, Inc. (First Rockford), appeals the trial court's order granting the motion to dismiss filed by defendant, Rockford Heating and Air Conditioning, Inc. (Rockford Heating), pursuant to section 2-619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2010)) on statute-of-limitations grounds. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3 First Rockford was engaged in the business of constructing commercial properties. Fireman's Fund insured First Rockford for, *inter alia*, property damage to a building that was under construction in Rockford, Illinois.

¶ 4 The complaint alleged the following. Sometime before February 1, 2008, First Rockford installed two temporary hanging furnaces to heat the building while First Rockford installed permanent flooring. First Rockford hired Rockford Heating to install a ventilation system for the temporary furnaces. On February 1, a fire occurred in the building, originating in one of the furnaces, and caused damage to the building's walls and ceiling. Under the terms of the insurance contract, Fireman's Fund paid a total of $67,208.97 in damages to First Rockford.

¶ 5 On May 18, 2012, Fireman's Fund, as subrogee of First Rockford, filed a complaint in the circuit court of Winnebago County, alleging that Rockford Heating was negligent by failing to exercise a reasonable degree of care and caution in the construction and installation of the ventilation system for the two temporary furnaces. The complaint alleged that Rockford Heating's negligence caused the fire.

¶ 6 On June 25, 2012, Rockford Heating filed a motion to dismiss the complaint pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2010)), arguing that the four-year limitations period provided in section 13-214(a) of the Code (735 ILCS 5/13-214(a) (West 2010)) barred Fireman's Fund's action. On July 18, the trial court granted Rockford Heating's motion to dismiss. On November 29, the trial court vacated the dismissal and set a briefing schedule on the motion. On May 1, 2013, after briefing and arguments, the trial court granted the motion. Fireman's Fund timely appealed.

## II. ANALYSIS

Fireman's Fund argues that its complaint was timely because Rockford Heating's construction and installation activity did not fall under the purview of section 13-214(a) of the Code (735 ILCS 5/13-214(a) (West 2010)); specifically, Fireman's Fund asserts that, because the ventilation system was temporary, it did not constitute an "improvement to real property" as contemplated by the statute. Fireman's Fund contends that the five-year limitations period provided in section 13-205 of the Code (735 ILCS 5/13-205 (West 2010)) applies and that therefore the complaint was not time-barred. Rockford Heating contends that the trial court was correct in granting its motion to dismiss, because Fireman's Fund filed its complaint four years and three months after the fire occurred and therefore the complaint was barred by the four-year limitations period provided in section 13-214(a) of the Code.

Section 2-619(a)(5) allows a cause of action to be dismissed if it was not commenced within the time limited by law. *Compton v. Ubilluz*, 351 Ill. App. 3d 223, 227-28 (2004). We review *de novo* a dismissal pursuant to section 2-619, and, as part of our review, we accept as true all well-pleaded facts contained in the plaintiff's complaint and in any uncontradicted evidence submitted with the motion. *Amalgamated Transit Union, Local 308 v. Chicago Transit Authority*, 2012 IL App (1st) 112517, ¶ 12. The question on appeal is whether, absent any genuine issue of material fact, the dismissal was proper as a matter of law. *Id*. In addition, the application of a statute of limitations to a cause of action presents a legal question, which is likewise reviewed *de novo*. *Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461, 466 (2008).

The Limitations Act contained in article 13 of the Code establishes time limitations on personal actions. Section 13-205 provides for a five-year limitations period for actions to recover damages for injuries done to real property. On the other hand, section 13-214(a), entitled "Construction-Design management and supervision," provides in pertinent part:

> "(a) Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the *design, planning, supervision, observation or management of construction, or construction of an improvement to real property* shall be commenced within 4 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission." (Emphasis added.) 735 ILCS 5/13-214(a) (West 2010).

Fireman's Fund argues that Rockford Heating was merely a subcontractor doing a temporary installation on the building. Rockford Heating's role was not designing, planning, supervising, observing, or managing the construction. Thus, the issue is whether Rockford Heating constructed "an improvement to real property." The term "improvement to real property" is not defined. Our role as the reviewing court is to construe section 13-214(a), ascertaining and giving effect to the legislature's intent. *People v. Jameson*, 162 Ill. 2d 282, 287-89 (1994). Ordinarily, the best evidence of the legislature's intent is the language of the statute itself. *Id*. However, a statute's language is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *Id*. In this case, the parties offer conflicting interpretations of the term "improvement to real property" in section 13-214(a). We find that both interpretations are reasonable. Where the language of a statute is ambiguous, it is appropriate to consider other sources to ascertain the legislature's intent. *Id*.

¶ 12    We are guided by the legislative history of section 13-214. See *People v. Collins*, 214 Ill. 2d 206, 214 (2005). The Appellate Court, First District, in *Adcock v. Montgomery Elevator Co.*, 274 Ill. App. 3d 519 (1995), addressed the issue of whether a manufacturer is afforded protection under the repose period provided in section 13-214(b), quoting the following portions of debates in the Illinois General Assembly:

> " 'This bill would provide for an eight year statute of limitations against construction of improvements to real property by architects, contractors and engineers.
>
> * * *
>
> *** [W]e have enacted the products liability statute of limitations and a statute of limitations for physicians. In light of that background, this seems like a reasonable thing to do to protect those who construct improvements to real property.' (81st Ill. Gen. Assem., House Proceedings, May 25, 1979, at 29-30 (statements of Representative Dunn).)" *Id.* at 522.

The record of the same House debates also shows the following exchange between Representatives Dunn and Brummer:

> " 'Brummer: And it would apply to the architects and engineers only, not to the contractor?
>
> Dunn: No. It would apply to the architect, the engineer, the contractor, anyone who is involved in the, in the [*sic*] planning, supervision, or the construction of the improvement to real property.' 81st Ill. Gen. Assem., House Proceedings, May 25, 1979, at 31 (statements of Representatives Brummer and Dunn)." *Id.* at 522-23.

Thus, we conclude that the legislature intended to have the statute apply to "*anyone* who is involved" in the construction of an improvement.

¶ 13    Further support for our finding is found in *Prate Installations, Inc. v. Thomas*, 363 Ill. App. 3d 216 (2006) (in the context of a lawsuit against a homeowner for failure to pay a roofing contractor, the four-year statute of limitations did not apply to the defendant homeowners). In *Prate*, the court cited the legislative history revealing that the purpose of section 13-214(a) was to provide relief for professionals "who are trying to exercise their sound judgment in the design and construction of improvements to real property." (Internal quotation marks omitted.) *Id.* at 218. Citing *Prate*, Fireman's Fund argues, "just because the damages occurred on a construction site does not mean that the four-year statute applies." However, this statement is an oversimplification; our inquiry has to consider not only the role of Rockford Heating as a subcontractor but also the question of whether the ventilation system itself was, as a matter of law, an "improvement to real property" as contemplated by the legislature.

¶ 14    Whether an item constitutes an improvement to real property is a question of law; however, resolution of this question is grounded in fact. *St. Louis v. Rockwell Graphic Systems, Inc.*, 153 Ill. 2d 1, 3 (1992). Fireman's Fund points out that, in *St. Louis*, the supreme court stated that relevant criteria for determining what constitutes an improvement to real property include: whether the addition was meant to be permanent or temporary, whether the addition became an integral component of the overall system, whether the addition increased the value of the property, and whether the addition enhanced the use of the property. *Id.* at 4-5. However, this recitation of relevant criteria was in *dicta* and, given the procedural stance of *St. Louis*, we cannot say that it is dispositive here, as Fireman's Fund

avers. In *St. Louis*, the appellate court had affirmed the trial court's grant of the defendants' motions to dismiss on the ground that the complaint was time-barred under section 13-214(b)'s 10-year period of repose. However, the supreme court vacated the lower courts' judgments, holding that the factual record was insufficient to determine whether the installation of a printing press constituted an " 'improvement to real property' " and that, therefore, the court was unable to determine whether the action was time-barred. *Id.* at 5.

¶ 15    Although the character of the item in question as either temporary or permanent must be examined, in *St. Louis* the supreme court also looked to the dictionary definition of "improvement." We find the following definition: "An addition to real property, *whether permanent or not*; esp., one that increases its value or utility or that enhances its appearance." (Emphasis added.) Black's Law Dictionary 773 (8th ed. 2004). A Fourth District case, *McGee v. Danz*, 261 Ill. App. 3d 232 (1994), resolved this question under facts that are analogous to those in this case. In *McGee*, the plaintiff filed a legal malpractice action that was based on his former attorney's failure to file suit against a third party within the applicable statute of limitations. The plaintiff was working on an extensive residential remodeling project and suffered an electrical shock when he touched faulty wiring for temporary lighting installed in the basement. In finding that the temporary lighting was an essential part of the renovation, the court stated:

> "The record indicates extensive demolition and renovation involving the electrical, plumbing, and heating systems, as well as plastering work and the erection of retaining walls, all of which had been ongoing for at least three months prior to plaintiff's injury. The nature and scope of the work suggests a permanent rehabilitation of the realty which enhanced its value and life span, rather than mere incidental repairs which accomplish neither." *Id*. at 236.

Thus, here, although the ventilation system was not a permanent part of the building, its temporary nature is not dispositive of the issue of whether its construction and installation constituted an "improvement" as required by section 13-214(a). In this case, the entire building was new construction, where the nature and scope of the work unquestionably enhanced the value of the real estate.

¶ 16    Illinois case law addressing activities that gave rise to actions under the Structural Work Act (740 ILCS 150/0.01 *et seq.* (West 1992) (repealed by Pub. Act 89-2 (eff. Feb. 14, 1995))) provide guidance regarding when an activity is an "integral part of the entire operation." See *McNellis v. Combustion Engineering, Inc.*, 58 Ill. 2d 146, 151 (1974) (the determinative question was whether the unloading activities being performed by the decedent at the time of the accident constituted the erection of any building or other structure within the meaning of the Structural Work Act). Repealed in 1995, the Structural Work Act was intended to ensure stable support for a construction worker and provide him or her with a remedy when no other remedy was available, and it was to be liberally construed to protect workers engaged in dangerous and extrahazardous occupations. See *Glazier v. American National Bank & Trust Co. of Chicago*, 271 Ill. App. 3d 1098, 1101 (1995). While the legislative goal of the Structural Work Act was unrelated to the stated goal of section 13-214(a), the concept of an activity being integral and essential to a construction project is instructive. For example, the courts in two cases brought under the Structural Work Act decided that roofers' activities that resulted in injuries were necessary in order to perform their work and, therefore, were covered. See *Pozzi v. McGee Associates, Inc.*, 236 Ill. App. 3d 390 (1992); *Ashley v. Osman*

*& Associates, Inc.*, 114 Ill. App. 3d 293 (1983). In *Pozzi*, the roofer was injured while using part of a roof as a pathway; in *Ashley*, the roofer was injured when he slipped on planks set over mud while carrying equipment from his truck to the jobsite. In each case, the court held that the "device" used by the roofer constituted a "support" as contemplated by the Structural Work Act.

¶ 17    Similarly, the ventilation system in question in this case was necessary in order to complete construction of the building. Obviously, the permanent flooring was necessary for the building. The temporary furnaces were necessary for the installation of the permanent flooring, and the temporary furnaces would have been dangerous and/or useless without the ventilation system. In fact, the furnaces and the ventilation system served no purpose other than to enable the installation of the flooring. Thus, we find that the ventilation system was an "integral part of the entire operation." See *McNellis*, 58 Ill. 2d at 150.

¶ 18    The result urged by Fireman's Fund, *i.e.*, narrowly interpreting section 13-214(a) and finding that the ventilation system did not constitute an improvement to real property, was not intended by the legislature. As the legislative debates quoted *supra* indicate, the statute was intended to relate to *anyone* involved "in the planning, supervision, or the construction of the improvement to real property." This gives parties who are engaged in construction activities an idea of the time frame during which they could be held liable for injuries resulting from negligence in performing those activities. To hold that the ventilation system was not part of the improvement would achieve the incongruous result that First Rockford, which supervised the construction, installed the temporary furnaces in order to continue the construction, and ordered the installation of a ventilation system for the furnaces, would be shielded by section 13-214(a), while Rockford Heating, which acted at the direction, and under the control, of First Rockford, would not be protected.

¶ 19    As *McGee*, 261 Ill. App. 3d 232, holds, the determining factor is the totality of the construction. First Rockford, Fireman's Fund's insured, determined that Rockford Heating's construction and installation of the ventilation system was necessary in order to improve the property with the permanent flooring, an essential element of the construction. Therefore, we find that the ventilation system, although a temporary installation, was an essential step in the installation of an improvement to the property and that, under the language in section 13-214(a), Rockford Heating's activities fall under its purview.

¶ 20                                    III. CONCLUSION

¶ 21    For the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County.

¶ 22    Affirmed.

¶ 23    JUSTICE HUDSON, dissenting.

¶ 24    At issue in this case is which of two limitations periods governs plaintiff's cause of action. Section 13-205 of the Code (735 ILCS 5/13-205 (West 2010)) provides a five-year limitations period for "actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion

thereof, and all civil actions not otherwise provided for." Section 13-214(a) of the Code (735 ILCS 5/13-214(a) (West 2010)) provides a four-year limitations period for "[a]ctions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property." Unlike the majority, I conclude that defendant's installation of the temporary ventilation system does not constitute the "construction of an improvement to real property" as that term is used in section 13-214(a). As such, I would apply the five-year limitations period set forth in section 13-205 to plaintiff's cause of action. Accordingly, I respectfully dissent.

¶ 25    It is undisputed that the determination of which limitations provision applies in this case turns on whether the installation of the temporary ventilation system constitutes the "construction of an improvement to real property." This inquiry involves an issue of statutory construction. The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Jameson*, 162 Ill. 2d 282, 287-88 (1994). The best indication of the legislature's intent is the language of the statute itself, which must be given its plain and ordinary meaning. *People v. Donoho*, 204 Ill. 2d 159, 171 (2003).

¶ 26    As the majority correctly notes, the term "construction of an improvement to real property" is not defined in section 13-214(a) of the Code. When the legislature does not define a term contained in a statute, a court may use a dictionary to ascertain the plain and ordinary meaning of the term. *People v. Nash*, 409 Ill. App. 3d 342, 349 (2011). The term "construction" has been defined as "the act of putting parts together to form a complete integrated object." Webster's Third New International Dictionary 489 (2002). The term "improvement" has been defined as " '[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.' " *St. Louis v. Rockwell Graphic Systems, Inc.*, 153 Ill. 2d 1, 4 (1992) (quoting Black's Law Dictionary 682 (5th ed. 1979)). Our supreme court has instructed that relevant criteria for determining what constitutes an "improvement to real property" include: (1) whether the addition was meant to be permanent or temporary; (2) whether the addition became an integral component of the overall system; (3) whether the value of the property was increased; and (4) whether the use of the property was enhanced. *St. Louis*, 153 Ill. 2d at 4-5.[1] Although grounded in fact, the resolution of whether an item

---

[1]The majority characterizes the criteria set forth in *St. Louis* as "*dicta*." *Supra* ¶ 14. The term "*dictum*," also referred to as "*obiter dictum*," is defined as "[a] judicial comment made during the course of delivering a judicial opinion, but one that is *unnecessary to the decision in the case* and therefore not precedential (though it may be considered persuasive)." (Emphasis added.) Black's Law Dictionary 465, 1100 (7th ed. 1999). At issue in *St. Louis* was whether the installation of a printing press constituted an "improvement to real property" under section 13-214 of the Code. *St. Louis*, 153 Ill. 2d at 3. The court found the evidence of record insufficient to make this determination and remanded the matter to the trial court for further proceedings in light of the relevant criteria. *St. Louis*, 153 Ill. 2d at 4-5. In my view, a recitation of the criteria was necessary to the supreme court's decision, as it provided guidance to the trial court on remand regarding relevant factors for determining what constitutes an "improvement to real property." Although numerous Illinois courts have applied the criteria set forth in *St. Louis*, no court has described the criteria as *dicta*. See, *e.g.*, *Schott v. Halloran Construction Co.*, 2013 IL App (5th) 110428, ¶¶ 18, 21 (applying criteria); *Morietta v. Reese*

constitutes an "improvement to real property" is a question of law. See *St. Louis*, 153 Ill. 2d at 3.

¶ 27    Turning to the facts presented in this appeal, I cannot conclude that the installation of the temporary ventilation system at issue constituted the "construction of an improvement to real property" as that term is used in section 13-214(a) of the Code. First, although the alleged negligence occurred on a construction site, there is no evidence that defendant contributed to the "construction" of the building where the property damage occurred. See *DeMarco v. Ecklund*, 341 Ill. App. 3d 225, 228 (2003) ("[T]he court must look to the activity involved and determine whether it is a construction-related activity falling within section 13-214."). Defendant was a subcontractor hired to perform one specific duty–the installation of a temporary ventilation system. To be sure, the temporary ventilation system allowed First Rockford to operate two hanging furnaces and, in turn, temporarily heat the building so that First Rockford could install permanent flooring during the winter months. However, there was no allegation that defendant was involved in the installation of the flooring or that defendant contributed any materials or labor that resulted in the formation of "a complete integrated object." See *Prate Installations, Inc. v. Thomas*, 363 Ill. App. 3d 216, 219 (2006) (noting that, while the plaintiff might have been engaged in a construction-related activity, the defendant's contribution did not involve the construction of an improvement to property and section 13-214(a) did not apply). In my view, the relationship between the installation of the temporary ventilation system and the construction of the building is too tenuous for the installation to constitute a construction-related activity falling within section 13-214(a).

¶ 28    Even if the installation of the temporary ventilation system in this case could reasonably be viewed as construction-related, however, it does not constitute an "improvement to real property" under the four criteria set forth in *St. Louis*. First, it is undisputed that the ventilation system was intended to be temporary. It was installed solely to allow the use of the hanging furnaces, which, as noted above, permitted the installation of the permanent flooring during cold weather. Second, the ventilation system was not an "integral component" of the overall system. The ventilation system was meant to be removed after the permanent flooring was installed. Indeed, had the weather been warmer when the flooring was installed, the hanging furnaces and the ventilation system would have been unnecessary. Third, although the ventilation system allowed the installation of permanent flooring in cold weather, the permanent flooring would have been installed eventually, and there is no allegation that the earlier installation increased the value of the property. Similarly, while the ventilation system allowed First Rockford to continue working on the building during cold weather, I find no allegation that the use of the property was enhanced as a result of any benefit provided by the use of the ventilation system.

¶ 29    In support of its position that the installation of the ventilation system constituted the construction of an improvement to real property, defendant relies principally on *McGee v. Danz*, 261 Ill. App. 3d 232 (1994). I find *McGee* factually distinguishable. In that case, the

---

*Construction Co.*, 347 Ill. App. 3d 1077, 1081 (2004) (same); *Bailey v. Allstate Development Corp.*, 316 Ill. App. 3d 949, 961-62 (2000) (same). I also note that the author of the majority opinion relied upon these criteria in assessing whether additions to mobile homes constituted improvements to real property. See *Boone County Board of Review v. Property Tax Appeal Board*, 276 Ill. App. 3d 989, 997-98 (1995).

plaintiff received an electric shock as a result of contact with temporary wiring while working on a residential remodeling project. He hired the defendant, an attorney, to represent him in a suit against the electrical subcontractor who installed the temporary wiring. The defendant never filed suit against the electrical subcontractor, and the parties ended their attorney-client relationship. The plaintiff then hired new counsel who filed against the defendant a legal malpractice claim alleging that he failed to commence litigation within the appropriate limitations period.

¶ 30    At issue in *McGee* was whether the plaintiff's claim fell within the two-year limitations period for personal injuries under section 13-202 of the Code (Ill. Rev. Stat. 1991, ch. 110, ¶ 13-202 (now 735 ILCS 5/13-202 (West 2010))) or whether it fell within the four-year limitations period under section 13-214(a) of the Code (Ill. Rev. Stat. 1991, ch. 110, ¶ 13-214a (now 735 ILCS 5/13-214(a) (West 2010))). The trial court found that the four-year limitations period set forth in section 13-214(a) applied because the plaintiff's injury occurred in a "construction-related event." The trial court then noted that the defendant could not be negligent for failing to file a claim against the electrical subcontractor, because the attorney-client relationship between the plaintiff and the defendant ended prior to the expiration of the limitations period. Accordingly, the trial court granted the defendant's motion for summary judgment.

¶ 31    On appeal, the plaintiff argued, among other things, that the temporary wiring installed by the electrical subcontractor did not constitute the "construction of an improvement" for purposes of section 13-214(a) of the Code. The reviewing court rejected the plaintiff's position, noting that the temporary wiring "was clearly incidental to, and an essential part of, renovation of the premises." *McGee*, 261 Ill. App. 3d at 236. However, the electrical subcontractor in *McGee* was directly involved in the construction of extensive and permanent improvements to the residential real estate. Here, in contrast, defendant's role was limited to the installation of a temporary ventilation system.

¶ 32    For the reasons set forth above, I would reverse the trial court's judgment granting defendant's motion for involuntary dismissal and remand this cause for further proceedings.